# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DANIEL DOKEY,

                Plaintiff,

v.

SPANCRETE, INC.,

                Defendant.

Case No. 19-CV-921-JPS

**ORDER**

## 1.      BACKGROUND

In June 2019, Plaintiff Daniel Dokey ("Plaintiff") brought this action against Defendant Spancrete, Inc. ("Defendant") on behalf of himself and a putative collective under the Fair Labor Standards Act ("FLSA"). (Docket #1). Plaintiff also brought a class action, pursuant to Federal Rule of Civil Procedure 23, alleging that Defendant violated Wisconsin's Wage Payment and Collection Law ("WWPCL"). (*Id.*) Plaintiff has since filed two motions to compel, a motion for class certification, and a motion for partial summary judgment. (Docket #31, #34, #35, #70). Defendant also filed a motion for summary judgment.[1] (Docket #41). The Court will address these motions in the balance of this Order.

---

[1] Plaintiff filed a motion to file a sur-reply in opposition to Defendant's motion for summary judgment. (Docket #63). Courts in this district rarely grant leave to file a sur-reply, as "the local rules provide for a motion, a response and a reply, and in the vast majority of cases, this is sufficient." *Groshek v. Time Warner Cable, Inc.*, Case No. 15-C-157, 2016 WL 4203506, at *4 (E.D. Wis. Aug. 9, 2016). After reviewing Plaintiff's submission, the Court finds that it adds nothing to the record and has no effect on the disposition of this case. Thus, the Court denies Plaintiff's motion. *Novoselsky v. Zvunca*, Case No. 17-CV-427-JPS, 2017 WL 3025870, at *6 n.2 (E.D. Wis. July 17, 2017).

## 2.    FACTS

### 2.1    Plaintiff's Wage Claims

Defendant, a manufacturer of precast concrete products, is based in Waukesha, Wisconsin with other facilities located throughout Wisconsin, Illinois, and Florida. (Docket #1 at 3, #51 at 1). From May 2017 to January 2019, Plaintiff was a Quality Control Technician at Defendant's facility in Valders, Wisconsin. (Docket #1 at 6, #47 at 2). As a Quality Control Technician, Plaintiff was paid on an hourly basis and was considered a "non-exempt" employee for purposes of the FLSA and Wisconsin law. (Docket #47 at 2). Therefore, if Plaintiff worked over 40 hours in a given workweek, Defendant was obligated to pay Plaintiff one-and-a-half times his "regular rate" for those overtime hours. *See, generally,* 29 U.S.C. § 207(a)(1); Wis. Stat. § 103.025(c) (2020); Wis. Admin. Code § DWD 274.03 (2020). One's "regular rate" is not only his or her hourly rate of pay, but includes "all remuneration for employment paid to, or on behalf of, the employee," subject to numerous exceptions. 29 U.S.C. § 207(e).[2] Under both federal and state law, nondiscretionary bonuses must be included when employers compute an employee's regular rate of pay. *See* 29 U.S.C. § 207(e)(3)(a), 29 C.F.R. §§ 778.200(a)(3)(a), .208 (2021).

---

[2]While Wisconsin law does not define "regular rate," the Wisconsin Department of Workforce Development instructs that the "'regular rate' includes all remunerations paid to or on behalf of the employee such as commissions, nondiscretionary bonus [sic], premium pay, and piecework incentives." Dep't of Workforce Dev., *Hours of Work and Overtime Frequently Asked Questions*, https://dwd.wisconsin.gov/er/laborstandards/overtimefaq.htm (last visited Feb. 12, 2021). Wisconsin law gives "'due weight' to the experience, technical competence, and specialized knowledge" of its administrative agencies, such as the Department of Workforce Development. *Tetra Tech EC, Inc. v. Wis. Dep't of Rev.*, 914 N.W.2d 21, 28–29 (Wis. 2018).

Case 2:19-cv-00921-JPS   Filed 02/12/21   Page 2 of 24   Document 73

On June 24, 2019, Plaintiff filed this action alleging that Defendant violated both the FLSA and WWPCL by failing to include all forms of nondiscretionary compensation when calculating the regular rate of pay for its non-exempt, hourly employees. (Docket #1 at 4). However, in his motion for certification of the FLSA collective, Plaintiff sought to limit the collective to non-exempt, hourly-paid employees at Defendant's Valders, Wisconsin facility. (Docket #16 at 1). On January 8, 2020, this Court granted Plaintiff's motion, pursuant to 29 U.S.C. § 216(b) of the FLSA, and authorized Plaintiff's counsel to issue notices to the putative collective members (the "putative collective"). After Plaintiff's counsel issued such notices, the putative collective had thirty days to "opt-in" to the FLSA collective action. (*See* Docket #23).

Sometime after Plaintiff brought this action, Defendant hired the accounting firm Baker, Tilly, Virchow, and Krause LLP to conduct an audit. (Docket #40 at 3, #51 at 2). As a result of this audit, Defendant conceded that (1) it maintained a bonus program, the Op-Ex Employee Excellence Program (the "Op-Ex Bonus"), (2) the Op-Ex Bonus was nondiscretionary in nature, and (3) it failed to include that bonus in its employees' regular rate calculation when determining their respective overtime compensation. (Docket #40 at 3, #47 at 3, 5). The parties dispute whether this program ended in December 2018 or June 2019. (Docket #47 at 3).

On or about February 12, 2019, during the opt-in period, Defendant mailed both checks and letters to the putative collective. (Docket #40 at 2). This letter informed the members (1) about the audit and (2) that the enclosed check "represent[ed] the additional amounts that should have been paid . . . ." (Docket #40 at 2–3). Defendant also "doubled that payment to make up for the fact that [the amount] was originally miscalculated." (*Id.*

at 3). It is undisputed that neither Defendant, nor its attorneys, sought Court approval to contact the putative collective prior to mailing the aforementioned letters.[3] (*Id.* at 2). Plaintiff informed his counsel on February 17, 2020 that he received both a check and letter from Defendant. (Docket #60 at 9). Plaintiff's counsel notified Defendant that Plaintiff did not intend to deposit or cash his check, nor enter into negotiations concerning the same. (Docket #40 at 3). To date, he has neither deposited nor cashed his check.

## 2.2 The Parties' Discovery Dispute

As expected, during the pendency of this action the parties engaged in discovery. Plaintiff submitted his first set of discovery requests to Defendant on September 20, 2019, to which Defendant eventually responded. (Docket #60 at 4). Defendant initially objected to the production of various documents because the Court had not yet granted conditional certification. (*Id.* at 5, Docket #53-2 at 7–10).

In January 2020, after this Court granted conditional certification, Plaintiff tendered a second set of discovery requests to Defendant. (Docket #60 at 5). Plaintiff's counsel also e-mailed Defendant's counsel requesting supplemental responses to Plaintiff's first set of requests. (*See* Docket #53-4). On January 21, Defendant's counsel provided Plaintiff with the names and last known addresses for each member of the putative collective, which allowed Plaintiff's counsel to distribute notices to them, beginning the "opt-in" period. (Docket #60 at 5).

---

[3] The parties dispute the number of members of the putative collective and, thus, the number of checks and letters that Defendant mailed. (*See* Docket #47 at 7). Plaintiff avers that there were 154 members of the collective; Defendant maintains that there were 152 members. (*Id.*)

On February 12, 2020, Plaintiff's counsel reminded Defendant's counsel that its responses to Plaintiff's second set of discovery requests were due in a week. (*Id.* at 6). This correspondence occurred around the same time that Defendant's counsel mailed checks to the putative collective. (*Id.*) On February 17, 2020, after Plaintiff received his payment from Defendant, Plaintiff's counsel e-mailed Defendant's counsel. (*Id.* at 9). Among other things, Plaintiff's counsel expressed that it would be following up regarding Defendant's outstanding discovery responses. (*Id.*) On February 28, Defendant's counsel sent Plaintiff an e-mail with four documents showing "calculations and registers" of payments to the class members. (*Id.* at 10, Docket #53-6).

On March 13, 2020, Plaintiff's counsel e-mailed Defendant's counsel thanking him for "the summary documents" he provided, but expressed a desire for the "native documents." (Docket #54-3). Plaintiff's counsel reminded Defendant's counsel that Defendant's responses to Plaintiff's second set of discovery requests and supplemental responses to Plaintiff's first set of requests remained outstanding. (*Id.*) The parties do not dispute that both Plaintiff's and Defendant's counsel spoke later that day. (Docket #60 at 11). Plaintiff's counsel then sent a follow-up e-mail reiterating that, on the call, Defendant agreed to electronically provide Plaintiff with the records underlying Defendant's calculations. (*Id.* at 11). On March 18, Defendant's counsel finally provided Plaintiff with Excel spreadsheets, which Defendant's counsel states came from Defendant's payroll system. (*Id.* at 12, Docket #46-1). Plaintiff's counsel replied, clarifying that it sought "the actual, raw data." (Docket #46-1 at 1). Defendant's counsel then asked, "You want the paper time cards?" (*Id.*) Plaintiff's counsel did not answer that e-mail, but instead filed a motion to compel, (Docket #31). On March

25, five days after the Court's dispositive motion deadline, Defendant's counsel provided its outstanding discovery responses. (Docket #60 at 12). Notably, in response to Plaintiff's Interrogatory No. 18,[4] Defendant offered Plaintiff the opportunity to inspect the timecards of Defendant's Valders facility employees "upon reasonable notice." (Docket #60 at 12, #46-4 at 6, #53-11 at 6).[5]

### 2.3 The Parties' Dispute as to Defendant's Calculations

In February 2020, Plaintiff's counsel retained Benjamin M. Duveneck ("Duveneck"), an accounting and finance consultant, to provide his expert analysis in this matter. (Docket #55 at 1–2). Duveneck states that Plaintiff's counsel provided him with two Excel spreadsheets and two payroll registers with a check date of February 12, 2020. (*Id.*) Based on the information provided, Duveneck maintains that Defendant's calculations appear correct; however, because he did not have access to the "source documents," such as payroll registers and time sheets, Duveneck was (and

---

[4]"For each and every non-exempt employee identified in response to Interrogatory No. 17, identify the total number of non-overtime hours actually worked per workweek by said non-exempt employee for the period of time beginning June 24, 2016 and ending June 24, 2019."

[5]District courts have broad discretion in deciding matters relating to discovery. *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 646–47 (7th Cir. 2001); *Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir. 1993). While Defendant answered Plaintiff's requests in an untimely and piecemeal fashion, it appears that Plaintiff now has access to the items he sought via his first and second sets of discovery requests. To the extent that Plaintiff would like the underlying raw data, Defendant has offered Plaintiff the opportunity to inspect its timecards. Certainly, pursuant to Federal Rule of Civil Procedure 34(a)(1), making records available for inspection may be a permissible response to an interrogatory or request for production. *C & N Corp. v. Kane*, No. 12-C-0257, 2013 WL 74366, at *4 (E.D. Wis. Jan. 7, 2013). Thus, the Court will deny Plaintiff's first motion to compel, (Docket #31), as moot.

still is) unable to determine whether the amounts Defendant paid to each employee are accurate. (*Id.* at 3).

In March 2020, Plaintiff's counsel gave Duveneck two additional documents that Defendant claims contained the raw data that Duveneck sought to finalize his analysis. (*Id.* at 4). Duveneck determined that the calculations within these documents "contained numerous errors, omissions, inconsistencies, and variable pieces of information making it impossible" for him to determine the damages owed to Defendant's employees. (*Id.*) Duveneck reiterates that "to fully evaluate and attest to the amounts owed to each employee," he would need to review both the "payroll registers and timesheets." (*Id.* at 6). He also sought (and still seeks) information regarding the types and amounts of additional compensation listed in one of Defendant's spreadsheets. (*Id.*) Duveneck asserts that because he does not have the underlying, raw documentation he needs, he is unable to verify or independently calculate the amounts Defendant owes its employees. (*Id.*)

Notably, Defendant's Payroll Manager and Benefits Administrator, Michelle Fantl, has an explanation or clarification for each alleged inconsistency or error that Duveneck points out in his declaration. (*See* Docket #60 at 13–20, #62). Defendant takes the position that, because Duveneck has been able to identify issues with the records Defendant has provided thus far, Defendant must have provided Plaintiff with sufficient detail to double check whether Defendant's recalculations are correct. (*See, e.g.*, Docket #60 at 20) ("Additionally, because Duveneck was able to identify the issue with [Defendant's calculations for a particular employee], it reflects that the information Spancrete has provided to Plaintiff provides

[Duveneck] with sufficient detail to double check whether any particular employee's recalculation was correct.")

To summarize, while Plaintiff admits that Defendant has used the proper *method* to recalculate the amounts it owes to its employees as part of their regular rate, Plaintiff vehemently denies that Defendant has provided the appropriate underlying data to allow Plaintiff to verify whether Defendant's calculations are actually accurate. Based on the foregoing, the amounts that Defendant owes to its employees, including Plaintiff Dokey, remain in dispute.

### 3. CERTIFICATION OF THE RULE 23 CLASS[6]

Before addressing the parties' dispositive motions, the Court will rule on Plaintiff's motion for class certification pursuant to Federal Rule of

---

[6]Plaintiff simultaneously moved for class certification and for partial summary judgment as to Defendant's liability under the WWPCL to both Plaintiff and the Rule 23 class. (Docket #34, #35). This circuit has recognized that "it is the better policy for a district court to dispose of a motion for class certification promptly and *before* ruling on the merits of the case," *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 475 (7th Cir. 1997) (emphasis in original), so as to comply with the rule against one-way intervention. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1057–58 (7th Cir. 2016). This rule "prevents plaintiffs from moving for class certification after acquiring a favorable ruling on the merits of a claim," because "it is unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one." *Costello*, 810 F.3d at 1057–58 (internal quotations and citations omitted). However, in *Costello*, the Seventh Circuit held that because (1) the plaintiffs had filed for partial summary judgment and class certification contemporaneously and (2) the district court ruled on class certification before granting partial summary judgment for the plaintiffs, "the rule against one-way intervention [did] not preclude class certification." *Id.* at 1058. Here, Plaintiff has filed both motions contemporaneously and the Court addresses Plaintiff's motion for class certification first. Thus, according to *Costello*, the Court avoids any "one-way intervention" violation. However, "even if this sequence of events violated the rule against one-way intervention," Defendant has waived any such argument "by failing to raise it and by seeking a judgment on the merits before the Court had ruled on the class certification motion." *Tataru v. RGS Fin.*, No. 18-cv-06106, 2021 WL 38142, at *11 n.1 (N.D. Ill. Jan. 4, 2021).

Civil Procedure 23. (Docket #34). To bring his WWPCL claim on behalf of a class, Plaintiff asked the Court to certify the following class:

> All hourly-paid, non-exempt employees who are or have been employed by Defendant at its Valders, Wisconsin facility within the two (2) years immediately prior to the filing of the Complaint (ECF No. 1) and who received non-discretionary forms of compensation in addition to regular wages that were not included in their regular rates of pay for overtime calculation purposes.

(*Id.* at 1).

For his case to be eligible for class treatment, Plaintiff must first show the following: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)–(4).

Plaintiff bears the burden to prove, by a preponderance of the evidence, that each of these requirements is met. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Class certification should not be "a dress rehearsal for the trial on the merits." *Id.* However, there may be some overlap between merits and class issues because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (internal quotations and citations omitted). The Court finds that Plaintiff has satisfied his burden as to the Rule 23 requirements and addresses each in turn.

Although the parties dispute the exact number, it is clear that at least 150 of Defendant's employees received at least one form of non-

discretionary compensation (the Op-Ex Bonus), which Defendant failed to account for during the representative period. (Docket #36 at 12). Further, Plaintiff avers that more than 40 of these employees worked in excess of 40 hours per week during the period in which the bonus was earned. "While there is no magic number that applies to every case, a forty–member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017). In light of the foregoing, the Court finds that the class is sufficiently numerous to render the joinder of all members impracticable.

Next, the Court addresses Rule 23's commonality and typicality requirements. Commonality is satisfied by even a single common question among the class members, where the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011). A plaintiff's claim is considered typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [his] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (internal quotations and citation omitted). "Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Id.* (internal quotations and citation omitted).

Plaintiff argues—and Defendant admits—that Defendant uniformly deprived employees, including Plaintiff, of overtime compensation by failing to include its non-discretionary Op-Ex Bonus in its employees' regular rates. Certainly, the truth of that statement resolves an issue central to the proposed class. Further, Defendant admits to engaging in the same

Case 2:19-cv-00921-JPS   Filed 02/12/21   Page 10 of 24   Document 73

practice or course of conduct as to Plaintiff and the other proposed class members.

Lastly, the Court finds that Plaintiff and his counsel will fairly and adequately represent the interest of the class. Adequacy requires proof of three elements:

> (1) the representative's interest cannot be contrary to those of the rest of the class, *see Amchem Prods. v. Windsor*, 521 U.S. 591, 625–29 (1997); (2) the class representative must be sufficiently interested in the case outcome, *see Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986); and (3) class counsel must be qualified, experienced, and generally able to conduct the case, *see Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977).

*Wheeler v. Midland Funding LLC*, Case No. 15 C 11152, 2018 WL 1920254, at *4 (N.D. Ill. Apr. 24, 2018); *see also Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993). The Court finds that Plaintiff's interests are commonly aligned with Defendant's current and former employees that make up the proposed Rule 23 class and that Plaintiff is sufficiently interested in the outcome of this case. The Court also has no reservations regarding Plaintiff's counsels' ability to adequately represent the proposed class.

In addition to satisfying Rule 23(a), Plaintiff must show that his proposed class action fits within one of the three types outlined in Federal Rule of Civil Procedure 23(b). Plaintiff avers that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," (i.e., the proposed class satisfies Rule 23(b)(3)). As discussed above, Plaintiff has shown that there are prominent common issues amongst the proposed

class. Further, Defendant has not suggested that there are any individual issues that would jeopardize the proposed class. Even if it had, the Court finds it likely that the common issues would predominate over any such individual issues. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("[C]ommon issues need only predominate, not outnumber individual issues.") (quoting *In re Inter-Op Hip Prothesis Liab. Litig.*, 204 F.R.D. 330, 345 (N.D. Ohio 2001)).

Notably, Defendant does not argue that Plaintiff fails to satisfy any of the Rule 23 certification requirements. Rather, Defendant argues that because all potential class members have been fully compensated for all overtime, plus double that amount to account for damages, the potential class members have no claims or sustained no damages. (*See* Docket #48 at 6–7). Therefore, Defendant argues, a class is inappropriate.

Defendant relies on *Neuser v. Carrier Corp.*, No. 06-C-645-S, 2007 WL 1470855, at *4–5 (W.D. Wis. May 15, 2007), to support the proposition that when class members do not sustain any damages, the class members have no claim and thus, certification is unwarranted. Yet Defendant plucks this proposition from *Neuser* while glossing over the glaring factual differences between it and this case. In *Neuser*, the plaintiffs had purchased furnaces with a defective component from the defendant. *Id.* at *1. The plaintiffs' theory of liability was that due to the defendant's failure to disclose the defective nature of the product, the plaintiffs believed that the furnace would have a twenty-year lifespan. *Id.* at *4. However, the plaintiffs sought certification of a broadly defined class, which, based on its terms, would encompass persons who did not suffer any injuries caused by the defendant (e.g., persons with a properly working furnace or persons who sold their homes before their furnace failed). *Id.* Those proposed class members quite

literally had no claim because they either suffered no injury (i.e., their furnaces with the defective component still worked) or were in a position where they could not possibly have suffered such an injury (i.e., they had a furnace without a defective component). *Id.* at *4–5.

The members of Plaintiff's narrowly defined class in this case can be easily distinguished because they were, in fact, injured by Defendant when Defendant failed to properly compensate them. Defendant argues that because it mailed checks to the members of the proposed class, those persons are not injured. Defendant points to a decision from this district, *Fast v. Cash Depot, Ltd.*, 296 F. Supp. 3d 998 (E.D. Wis. 2017) ("*Fast I*"), *see* discussion *infra* Section 4.2, for additional support. In *Fast I*, the court noted that if it was true that the defendant had paid its employees to make them whole "then it would appear that [the defendant] has a strong argument that any motion by [the plaintiff] to conditionally certify a class should be denied." *Id.* at 1006. However, Plaintiff adamantly disputes whether Defendant has appropriately compensated its employees because Defendant has not provided the raw data to allow Plaintiff to double check Defendant's calculations. *See supra* Section 2.3. Further, Plaintiff has shown that, in at least once instance, Defendant's initial calculations were not correct. *See infra* Section 4.3. Because it is unclear whether Defendant has properly compensated all members of the proposed class, it is also unclear whether such persons have been made whole. If Defendant has not made them whole, those persons would still be considered injured. The Court finds that Defendant's reliance on *Neuser* is inapposite and that certification of the proposed class is appropriate. Because Plaintiff has carried his burden with respect to class certification, the Court will grant his motion (Docket #34) and certify the desired class.

## 4. THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

### 4.1 Legal Standard

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

### 4.2 Plaintiff's Motion for Partial Summary Judgment

With regard to Plaintiff's FLSA claim, Plaintiff has filed a motion for partial summary judgment as to Defendant's liability. Notably, Plaintiff pursues his summary judgment as to his FLSA claim *individually* and not on behalf of the putative collective. However, Plaintiff seeks partial summary judgment on his behalf and on behalf of the Rule 23 class as to Defendant's liability under the WWPCL.

Federal and state law required Defendant to include nondiscretionary forms of compensation when calculating its employees' respective regular rates of pay. This regular rate, in turn, impacted those employees' overtime compensation. Defendant has admitted that its Op-Ex Bonus was non-discretionary and that "in practice, Defendant failed to include" this bonus in "Plaintiff's and all other [e]mployees'" regular rates of pay when determining Plaintiff's overtime compensation. (*See* Docket

#47 at 5). Thus, there appears to be no genuine issue of material fact as to Defendant's liability under the FLSA as to Plaintiff, nor as to Plaintiff and the Rule 23 class pursuant to the WWPCL.

Defendant argues that Plaintiff's motion must be denied because Plaintiff "has admittedly sustained no damages." (Docket #48 at 7). Specifically, Defendant avers that "Plaintiff has admitted that the calculation of his . . . damages was done pursuant to the same methodology that the Department of Labor uses and that the calculations were accurate." (*Id.*) To be sure, Plaintiff has admitted that the *method* Defendant used to calculate damages was correct. (*See* Docket #40 at 3) ("The methodology used to calculate the amount owed to Mr. Dokey and the other putative members of the collective and class was the same or substantially similar to that utilized by the United States Department of Labor."). But Plaintiff steadfastly argues that he has not been provided with the necessary data to determine whether Defendant's calculations are, in fact, correct. (*See* Docket #51 at 4) ("Plaintiff DENIES that Defendant uniformly and correctly applied said methodology utilized by the United States Department of Labor to each putative member of the collective and class and DENIES the accuracy and adequacy of Defendant's payments, as they are incapable of evaluation and verification.") (emphasis in original); (*see also* Docket #57 at 3) ("Thus, while [Plaintiff's expert] opined that Defendant performed adequate mathematical operations, the calculations and the data underlying them remain in dispute.").

Similarly, with regard to Plaintiff's WWPCL claim, Defendant maintains that it is undisputed that "the analysis under the FLSA holds in equal force," and thus, there are no claims left to dispute. As to the Rule 23 class, Defendant maintains that because Plaintiff "admits that the

methodology is correct and the calculations are accurate" class certification is inappropriate and without a class, the Court cannot grant summary judgment as a matter of law. The Court has already rejected Defendant's arguments that (1) a Rule 23 class is inappropriate in this case, *see supra* Section 3, and (2) there is no dispute as to the accuracy and adequacy of Defendant's calculations for both Plaintiff and the Rule 23 class.

Defendant turns to *Fast I*, 296 F. Supp. 3d 998, for support that there is no dispute as to the amount owed to Plaintiff and the class members. In that case, the plaintiff, Timothy Fast ("Fast"), alleged that his employer violated the FLSA by failing to include nondiscretionary bonuses and on-call premiums when calculating its employees' regular rates of pay. *Id.* at 1000. Like Defendant, Cash Depot hired an accounting firm, which determined that Cash Depot owed its employees, including Fast, money in overtime compensation. *Id.* Cash Depot then electronically deposited funds into the accounts of current employees and mailed checks to its former employees, including Fast. *Id.* at 1000–01. As part of its responses to Fast's discovery requests, Cash Depot provided him with documents summarizing the accounting firm's calculations. *Id.* at 1001. Fast argued that, based on his own calculation, Cash Depot had underpaid him. *Id.* at 1002. Eventually, counsel for both parties had a teleconference to discuss the accounting firm's methodology and calculations. During this conference, Fast's counsel maintained that, pursuant to its calculations, Cash Depot owed Fast more money. *Id.* However, Fast's counsel refused to substantiate this claim "because he did not want Cash Depot to disburse additional checks to Fast . . . ." *Id.*

Cash Depot moved for summary judgment, which required Fast, as the non-movant, "to present some evidence to allow the court to accept his

position that Cash Depot's calculations regarding Fast's additional overtime payments are incorrect." *Id.* at 1004. Because Fast had not "submit[ed] evidentiary materials that set forth specific facts showing that there [was] a genuine issue for trial," the Court found that Fast had waived any claim that Cash Depot's calculations were incorrect. *Id.* (quoting *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008)). The district court granted Cash Depot's motion "to the extent that Cash Depot correctly calculated" the amount that it owed Fast. *Fast I*, 296 F.3d at 1006.

While this case does share a similar factual background to *Fast I*, unlike the plaintiff in that case, Plaintiff has shown that damages in this case are very much in dispute. Defendant argues that it made the "raw data" which Plaintiff's expert seeks (e.g., timecards) available for Plaintiff's inspection and that Plaintiff is burying his head in the sand. The Court notes, however, that Defendant inquired as to whether Plaintiff wanted its timecards as late as March 18, 2020 (two days before the dispositive motion deadline) and did not formally offer Plaintiff the opportunity to inspect the timecards until March 25. Had Defendant provided Plaintiff with a more timely opportunity to examine the "raw data" Defendant used to calculate damages and Plaintiff refused to substantiate the amount owed to him and the class members, then the Court could hold, as Judge Griesbach did in *Fast I*, that Plaintiff had not demonstrated a genuine issue for trial. However, Plaintiff's ability to determine his damages in this case is noncomparable to the situation in *Fast I*, due, in large part, to Defendant's uncooperative actions. Defendant cannot now claim that Plaintiff's obstinance is the reason why Plaintiff's damages and the damages of the Rule 23 class remain in dispute. There being no genuine issue as to Defendant's liability under the FLSA as to Plaintiff and under the WWPCL

as to Plaintiff and the Rule 23 class, the Court will grant Plaintiff's motion for partial summary judgment, (Docket #35).

### 4.3 Defendant's Motion for Summary Judgment

In its motion for summary judgment, Defendant argues that because Defendant has already paid the wages it owed to its employees under the FLSA and WWPCL, and that because Plaintiff admitted that Defendant used the correct *methodology* when calculating those amounts, Defendant has no remaining liability as to any of the putative collective or class members. The Court has already rejected this line of reasoning, *see infra* Section 4.2. Notably, in response to Defendant's motion, Plaintiff proffers some additional evidence concerning the accuracy and adequacy of Defendant's calculations, which, in turn, belies Defendant's assertion that there are no genuine issues of material fact in this case. Defendant concedes that Plaintiff's expert identified an error in one of Defendant's recalculations as to the overtime of Defendant's employee, James Goehring ("Goehring"). After Plaintiff's expert shed light on this error, Defendant issued another check to Goehring for double the amount Defendant owed to him. Further, the bulk of the parties' briefing consists of a back-and-forth regarding their respective calculations.

The Court also notes that there is a genuine dispute as to whether the Op-Ex Bonus was the *only* nondiscretionary bonus that Defendant offered, as well as a dispute as to when the Op-Ex Bonus was offered. Both of these variables could impact the overtime calculations in this case. Defendant denies the existence of bonus plans other than the Op-Ex Bonus during the relevant time period. Yet, Plaintiff points out that this Court conditionally certified a collective comprised of Defendant's employees who were improperly compensated "as a result of Defendant's failure to

include all non-discretionary compensation, *such as* 'Op-Ex Employee Excellence Program Bonuses,' in said employee' regular rate of pay for overtime calculation purposes." (Docket #50 at 13, #23) (emphasis added). Plaintiff argues that his admission regarding Defendant's use of the correct methodology does not foreclose the possibility that Defendant failed to include all forms of non-discretionary compensation in its calculations. (Docket #50 at 14). The Court agrees.[7] Therefore, the Court will deny Defendant's motion for summary judgment.

Lastly, in their respective briefs on Defendant's motion for summary judgment, the parties include extensive discussion as to whether attorneys' fees are available to Plaintiff under both federal and state law. The Court finds that the wiser exercise of discretion on the matter of whether

---

[7]The Court also dispenses with Defendant's suggestion that Plaintiff's and the Rule 23 class' claims are moot. (*See* Docket #48 at 3–4). In *Fast v. Cash Depot, Ltd.*, Case No. 16-C-1637, 2018 WL 5832155, at *4 (E.D. Wis. Nov. 7, 2018), ("*Fast II*") the district court held that because "Fast concede[d] that he has been fully paid the wages owed pursuant to the FLSA . . . . [A] live controversy no longer exist[ed], and the court lack[ed] jurisdiction as a result." *See also, Fast v. Cash Depot Ltd.*, 931 F.3d 636, 639 (7th Cir. 2019) ("*Fast III*") ("The [district] court then determined that because Fast never moved to certify the class and because his counsel conceded that Cash Depot paid Fast and the putative class the proper amount of owed wages, a live controversy no longer existed.") Unlike *Fast II*, Plaintiff has not conceded that he has been fully paid and it remains disputed whether Defendant has fully paid the Rule 23 class. In fact, Plaintiff's posture is similar to that of the plaintiff in *Fast I*, when the district court determined that, at that stage, the plaintiff's case was not moot. In *Fast I*, 296 F. Supp. 3d at 1005, the district court noted that the Seventh Circuit "decided that a collective or class action plaintiff can refuse an offer of settlement for the full value of his claim to avoid rendering his potential class or collective action moot." The court then instructed the parties to "assess their respective positions and determine where, if at all, any dispute still exist[ed]." *Id.* at 1006. Here, Plaintiff has avoided cashing his check and this Court has already determined that a genuine dispute of material fact still exists. Thus, Plaintiff's claim is not moot. Similarly, because there is a genuine dispute as to the amounts Defendant owes to the Rule 23 class, a live controversy remains.

attorneys' fees may be awarded and, if so, in what amount is best left for the parties and their counsel to thoughtfully address in the first instance. In the event they are unable to reach an accommodation, the Court will defer any further consideration of this question until such time as the case is otherwise concluded.

## 5.     PLAINTIFF'S SECOND MOTION TO COMPEL

Lastly, the Court addresses Plaintiff's second motion to compel, (Docket #70), which Plaintiff filed on September 22, 2020. Plaintiff explains that on May 20, 2020, he served his Third Set of Interrogatories and First Set of Requests to Admit. At that time, trial was scheduled for June 22, 2020. Pursuant to Civil Local Rule 26(c), the parties must have concluded discovery on or before May 22 (i.e., "30 days before the date on which trial was scheduled"). "Completion of discovery means that discovery must be scheduled to allow . . . interrogatories and requests for admissions to be answered, and documents to be produced before the deadline . . . ." Civ. L.R. 26(c). Thus, when it served these discovery requests, Plaintiff ultimately gave Defendant two days to respond. When Defendant filed its responses on June 19, 2020, it objected to all of Plaintiff's requests on the basis that such requests were untimely.

Notably, on May 28, 2020—eight days after Plaintiff served its Third Set of Discovery Requests—the parties filed a motion to amend the trial scheduling order, (Docket #68), which the Court granted. Plaintiff argues that because no trial was scheduled at the time Defendant's responses became due, the time for completing discovery had yet to pass. Plaintiff also argues that even if the deadline had passed, because the Court indicated it would reschedule dates and deadlines as circumstances warrant, the Court

should reopen discovery pursuant to Civil Local Rule 26(c) and compel Defendant to answer Plaintiff's Interrogatories Nos. 22–24.

The Court rejects Plaintiff's assertion that by granting the motion to amend the scheduling order, it had also altered the discovery deadline in this case. *See Balschmiter v. TD Auto Fin. LLC*, No. 13-CV-1186-JPS, 2015 WL 2451853, at *9 (E.D. Wis. May 21, 2015) ("[T]he Court's order . . . altered nothing other than the trial date and those dates that flow necessarily from the trial date (the final pretrial conference date, trial brief due dates, etc.). [The Court] did not, however, magically reset every deadline in the case previously outlined by the Court—dates that the parties were well aware of."). The Court also rejects Plaintiff's argument that it should reopen discovery. "Reopening discovery after the discovery period has closed requires a showing of good cause." *Gucci Am., Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 139 (S.D.N.Y. 2011).

Plaintiff does not attempt to make a showing of "good cause." Further, Plaintiff's Interrogatories Nos. 22 and 23 request information regarding which of Defendant's employees accepted or did not accept the payments that Defendant sent on or around February 12. (Docket #71-2 at 1–2). "Where a party is aware of the existence of documents or other information before the close of discovery and propounds requests after the deadline has passed, those requests should be denied." *Gucci Am., Inc.*, 790 F. Supp. 2d at 140. Plaintiff submitted these interrogatories and requests to admit on May 20, 2020, only two days before discovery was to close; however, he was aware that Defendant had mailed checks to employees approximately two months earlier. The Court finds that Plaintiff could have requested this information sooner than May 20, 2020.

Plaintiff's Interrogatory No. 24 asks Defendant to identify the factual or legal basis if Defendant denied any of Plaintiff's Requests to Admit. (Docket #71-2 at 2). Thus, a response to that interrogatory requires Defendant to respond to each of Plaintiff's Requests to Admit. Upon review of those requests, the Court determines that, with one exception, Request No. 36,[8] Plaintiff was not seeking novel information from Defendant. Instead, Plaintiff asks Defendant to admit to facts that were already a part of the record in this case. Based on the foregoing, the Court will deny Plaintiff's second motion to compel, (Docket #70).

**6.    CONCLUSION**

Because there is no genuine issue of material fact as to Defendant's liability as to Plaintiff, individually, pursuant to the FLSA, and as to both Plaintiff and the recently certified Rule 23 class pursuant to the WWPCL, the Court will grant Plaintiff's motion for partial summary judgment as to Defendant's liability. (Docket #35). Yet, because there is an outstanding, genuine factual dispute as to whether Defendant has appropriately compensated Plaintiff, the putative collective,[9] and members of the Rule 23 class, the Court denies Defendant's motion for summary judgment. (Docket #41). This case will proceed to trial, to be scheduled at such time as the Court finds it is safe to conduct such proceedings in person.

---

[8]Plaintiff's Request to Admit No. 36 asks Defendant to admit that "As of May 20, 2020, Spancrete had not yet disclosed any experts to Plaintiff."

[9]Plaintiff did not move for partial summary judgment as to Defendant's liability under the FLSA as to the putative collective. Therefore, the question of Defendant's liability to the FLSA putative collective remains.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for class certification pursuant to Federal Rule of Civil Procedure Rule 23 (Docket #34) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the following class is hereby certified pursuant to Federal Rule of Civil Procedure 23: All hourly-paid, non-exempt employees who are or have been employed by Defendant at its Valders, Wisconsin facility within the two (2) years immediately prior to the filing of the Complaint (ECF No. 1) and who received non-discretionary forms of compensation in addition to regular wages that were not included in their regular rates of pay for overtime calculation purposes;

**IT IS FURTHER ORDERED** that Plaintiff's motion for partial summary judgment (Docket #35) as to Defendant's liability under the Fair Labor Standards Act as to Plaintiff, individually, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for partial summary judgment (Docket #35) as to Defendant's liability under the Wisconsin Wage Payment and Collection Law as to the Plaintiff and the Rule 23 class be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (Docket #41) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to file a sur-reply (Docket #63) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's first motion to compel (Docket #31) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that Plaintiff's second motion to compel (Docket #70) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 12th day of February, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge